# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RONALD PHILLIPS, | ) | CASE NO. 5:12CV2323 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| NORM ROBINSON, WARDEN, | ) | **AND ORDER** |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Respondent, Warden Norm Robinson ("respondent"), has filed a motion to dismiss (ECF No. 6) the second-in-time petition of Ronald Phillips ("petitioner" or "Phillips") for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. In his petition (ECF No. 1), Phillips contends that Ohio's lethal-injection execution protocol violates the Eighth and Fourteenth Amendments to the United States Constitution. Respondent argues that the petition should be dismissed because, among other things, it states claims that are not cognizable in habeas, is barred as a second or successive petition under 28 U.S.C. § 2244(b), and is untimely under 28 U.S.C. § 2244(d). Phillips filed a memorandum opposing the motion to dismiss. (ECF No. 9). For the following reasons, the motion to dismiss is **DENIED**.

## I.    RELEVANT BACKGROUND

On August 18, 1993, an Ohio jury convicted Phillips of the aggravated murder, felonious sexual penetration, and rape of Sheila Marie Evans, the three-year-old daughter of Phillips's girlfriend. On September 14, 1993, the trial court adopted the jury's recommendation

that Phillips be sentenced to death for the child's murder and to life imprisonment for his remaining convictions. Phillips's convictions and sentence were left undisturbed by direct appeal and state post-conviction proceedings.[1]

In 2003, Phillips sought federal habeas relief in this Court, raising twenty-five claims. Notably, he did not assert a claim challenging the constitutionality of Ohio's method of execution. This Court denied Phillips's petition on September 29, 2006. *Phillips v. Bradshaw*, No. 5:03 CV 875, 2006 WL 2855077 (N.D. Ohio Sept. 29, 2006). The Sixth Circuit affirmed that decision on June 1, 2010. *Phillips v. Bradshaw*, 607 F.3d 199 (6th Cir. 2010). The United States Supreme Court denied Phillips's petition for writ of certiorari on March 7, 2011. *Phillips v. Bradshaw*, 131 S. Ct. 1605 (2011). On December 16, 2011, the Ohio Supreme Court set Phillips's execution date for November 14, 2013.

Phillips filed this second petition for writ of habeas corpus on September 17, 2012. (ECF No. 1.) He asserts two claims in his new habeas petition, both challenging Ohio's lethal-injection protocol as adopted on September 18, 2011, and modified in February and March 2012. The first claim is grounded in the Eighth and Fourteenth Amendments, alleging that Ohio's "current lethal injection policy, protocols, and procedures . . . create a substantial risk of harm and/or an objectively intolerable risk of harm, including severe physical and/or mental/psychological pain and suffering, as well as torturous or lingering death, that have and will continue to result in executions not in accord with the 'dignity of man' under the well-settled principles of the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . ." (*Id.* at

---

[1] The facts and procedural history of this case are more fully set forth in *State v. Phillips*, 74 Ohio St. 3d 72, 656 N.E.2d 643 (Ohio 1995), and this Court's Memorandum of Opinion and Order, dated September 29, 2006, *Phillips v. Bradshaw*, No. 5:03 CV 875, 2006 WL 2855077 (N.D. Ohio Sept. 29, 2006).

13.)[2] This risk arises in part from Phillips's "unique individual characteristics," including a history of hypertension, anxiety attacks, and psychiatric conditions that have been treated with anti-psychotic medications. (*Id*. at 14.) The risk also stems from Ohio's execution policy, protocols, and procedures, including the drugs employed, the delivery mechanisms used for those drugs, the physical structures employed, the personnel and training involved, Ohio's "substantial and documented" pattern of repeated deviation from the written protocol, the absence of safeguards, the "unfettered" discretion permitted certain individuals involved, the State's "repeated failure and apparent inability" to carry out an execution without "serious problems," and the denial of his constitutional right to counsel. (*Id*. at 14-15.)

Phillips's second claim is grounded in the Equal Protection Clause of the Fourteenth Amendment. He argues that Ohio has deviated from its death penalty statute, Ohio Rev. Code § 2949.22(A), which mandates that the death penalty be imposed "quickly and painlessly," and its lethal-injection execution protocol. These deviations, he asserts, affect death-row inmates disparately, with some inmates suffering "excruciating deaths" while others do not, in an irrational manner and without furthering any legitimate state interests. (*Id*. at 18-19.)

Phillips asserts that Ohio is not able, "regardless of the policy, protocols, and procedures in effect at any given time[,]" to administer the lethal injection in a way that satisfies the Eighth and Fourteenth Amendments. (*Id*. at 16, 18.) He requests as relief, among other things, "[t]hat this Court declare that Phillips's sentence of death under Ohio law violates the Eighth and/or Fourteenth Amendments and other provisions of the United States Constitution as well as the various treaties and charter obligations of the United States[.]" (*Id*. at 19.)

---

[2] All page citations are to the PageID# in each ECF document.

In addition to this case, Phillips is one of the many death-sentenced inmates challenging Ohio's current execution protocol in a civil rights complaint filed on November 4, 2011, in the United States District Court for the Southern District of Ohio under 42 U.S.C. § 1983, now entitled *In re Ohio Execution Protocol Litigation*, No. 2:11 CV 1016. ("*In re OEPL*.")[3] The plaintiffs claim in that case that Ohio's use of its execution protocol employing lethal injection will violate their civil rights. They seek injunctive and declaratory relief. That suit remains pending before Judge Gregory Frost.

The omnibus complaint in *In re OEPL* raises the following six claims for relief: (1) violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment; (2) substantive and procedural due process violations under the Fourteenth Amendment; (3) violations of the rights to access to counsel and to the court under the First, Sixth, Eighth, and Fourteenth Amendments; (4) violation of the Equal Protection Clause of the Fourteenth Amendment; (5) violation of the inmates' fundamental rights arising under the Ninth Amendment; and (6) violations of the First Amendment right to free speech. *See* Omnibus Complaint, ECF No. 4, at ¶¶ 1018-1131.

In language that is nearly identical to Phillips's habeas petition, the *In re OEPL* complaint alleges that Ohio's current execution protocol creates a "substantial" and/or "objectively intolerable" risk of harm in light of each of the named plaintiffs' "individual, unique physical and mental characteristics" and "the substantial likelihood" of Ohio's maladministration of its execution protocol "through deviations and variations" from the protocol's written mandates. *Id*. at ¶¶ 3-4. Moreover, just as in Phillips's habeas petition, the complaint challenges: (1) the delivery mechanisms used for the execution drugs; (2) the physical structures employed

---

[3] According to the docket of *In re OEPL*, there are more than 100 plaintiffs.

in Ohio's execution protocol; (3) the personnel and training involved in Ohio's execution process; (4) Ohio's "substantial and documented pattern of repeated deviation" from its written execution policy; (5) the "functional nonexistence of the written policy's safeguards as administered"; (6) the "unfettered discretion" granted to several of the actors involved in the execution process; and (7) the State's "repeated inability to carry out an execution without encountering serious problems." *Id.* at ¶ 4. The complaint further alleges the denial of other constitutional rights, including the right to "unhindered access" to counsel and the right to free speech. *Id.* at ¶ 8, 1120-31. Many of these § 1983 claims are based on allegations that Ohio unlawfully deviates from its written protocol. *See, e.g., id.* at ¶¶ 9, 24, 25, 1025-33, 1037, 1041, 1051, 1083, 1086, 1089, 1092, 1093, 1098-1100.

On December 14, 2012, respondent filed a motion to dismiss Phillips's petition. (ECF No. 6.) He argues that the petition fails to state a claim that is cognizable in habeas, because Phillips is specifically attacking Ohio's current execution protocol rather than generally challenging the State's use of lethal injection as a method of execution. He further contends that, even if Phillips's claims are cognizable, this Court lacks jurisdiction over the petition because it is a second or successive petition under 28 U.S.C. § 2244(b), and is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d). (*Id.* at 77.)

On November 15, 2012, this Court ordered Phillips to further brief the Court as to why his petition should not be dismissed without prejudice on the grounds that his claims are: (1) duplicative of the § 1983 claims he is currently litigating in *In re OEPL*; and (2) not cognizable in habeas. (ECF No. 3.) Phillips complied on November 30, 2012. (ECF No. 5.)

## II.    ANALYSIS

### A.    The Nature of Phillips's Claims: Civil Rights (§ 1983) or Habeas Corpus (§ 2254)

Respondent first argues that Phillips's petition should be dismissed because it fails to state a claim that is cognizable in habeas corpus. He contends that Phillips's claims constitute a "specific challenge to the procedures for implementing lethal injection" in Ohio and, as such, fall within the "[e]xclusive jurisdiction" of § 1983. (ECF No. 6 at 84.) Moreover, he argues, the claims "mirror" Phillips's claims in his § 1983 action in the Southern District of Ohio, and "[t]he law does not permit the simultaneous litigation of the same claims in both a § 1983 case and a habeas case . . . ." (*Id*. at 78.) The Court finds these arguments unpersuasive.

### 1.    Viability of method-of-execution claims in habeas corpus

Capital inmates in Ohio and elsewhere have vigorously challenged lethal injection as a method of execution, since it became widely used over the past two decades,[4] through both habeas corpus petitions under 28 U.S.C. § 2254 and civil rights actions under 42 U.S.C. § 1983. Habeas corpus and § 1983 are the two main vehicles federal law provides for relief related to imprisonment. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006). Generally speaking, habeas corpus petitions challenge the validity of confinement or the particulars affecting its duration, while § 1983 actions challenge the circumstances of confinement. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). Respondent urges the Court to follow the Eleventh Circuit's position that

---

[4] Ohio first began using lethal injection as a means of execution in 1993, and it became Ohio's sole method of execution in 2001. *See Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). Ohio specified lethal injection by statute, but its protocol (referring to its policies, practices and procedures) for administering lethal injection is "not established by statute or administrative rule or regulation." *Id*. at 418. *See* Ohio Rev. Code § 2949.22; DRC Policy 01-COM-11 (copy attached to ECF No. 1). Thus, the promulgation and implementation of Ohio's lethal-injection protocol is solely within the discretion of the Ohio Department of Rehabilitation and Correction ("ODRC"), which "can change the protocol at any time, regardless of whether an inmate is scheduled for execution." *Cooey*, 479 F.3d at 426. In fact, Ohio has done just that on numerous occasions. *See Cooey (Biros) v. Strickland*, 588 F.3d 924, 927 (6th Cir. 2009). Ohio's last execution protocol was adopted on September 18, 2011. *See Cooey (Brooks) v. Kasich*, Nos. 2:04-cv-1156, 2:09-cv-242, 2:09-cv-823, 2:10-cv-27, 2011 WL 5326141, at *2 (S.D. Ohio Nov. 4, 2011).

"[a] § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." (ECF No. 6 at 79, quoting *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1261 (11th Cir. 2009).) This Court, however, is bound by precedent of the United States Supreme Court and the Sixth Circuit Court of Appeals that suggests otherwise.

The Supreme Court first addressed the issue of whether claims challenging lethal injection more properly sound in habeas or § 1983 in two cases in which the inmates sought to raise their claims in § 1983 actions, but the State argued that their claims belonged in habeas. In *Nelson*, *supra*, an inmate alleged that Alabama's "cut-down" procedure, in which, prior to his execution by lethal injection, an incision would be made into his arm or leg to access his severely compromised veins, violated the Eighth Amendment. He sought a permanent injunction against the procedure and a temporary stay of execution. The Court acknowledged that method-of-execution claims cannot easily be labeled as either § 1983 or habeas; the claim "does not directly call into question the 'fact' or 'validity' of the sentence itself," yet "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." *Id.* at 644. The Court, however, declined to resolve "the difficult question of how to categorize method-of-execution claims generally." *Id.* The Court held that § 1983 was the appropriate vehicle for the prisoner to challenge the procedure. *Id.* at 646-47. It explained that it "focus[ed] attention on whether petitioner's challenge to the cut-down procedure would *necessarily* prevent Alabama from carrying out its execution[,]" and found that it would not, because the procedure at issue was not statutorily mandated and the inmate conceded the existence of an acceptable alternative procedure. *Id.* at 647 (emphasis in original). The Court noted, however, that these claims "fall at the margins of habeas." *Id.* at 646.

Two years later, in *Hill, supra,* the Supreme Court considered the question of whether an inmate's challenge of Florida's three-drug protocol "*must* be brought by an action for a writ of habeas corpus . . . or whether it *may* proceed as an action for relief under [§ 1983]." *Hill,* 547 U.S. at 576 (emphases added). It held that, as in *Nelson,* the inmate's claim was cognizable through § 1983 and not subject to dismissal as a second or successive habeas petition because it was not a "challenge to the fact of the sentence itself." *Id.* at 579. The Court explained that, "as in *Nelson,* Hill's action if successful would not necessarily prevent the State from executing him by lethal injection. The complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin respondents from executing [Hill] in the manner they currently intend." *Id.* at 580 (internal quotation marks and citations omitted; alteration in original). It observed that Hill conceded that "other methods of lethal injection the Department could choose to use would be constitutional," and the State did not argue that "granting Hill's injunction would leave the State without any other practicable, legal method of executing Hill by lethal injection." *Id.* In addition, Florida statutory law did not require the State to use the challenged procedure. *Id.* Thus, the Court determined, "[u]nder these circumstances a grant of injunctive relief could not be seen as barring the execution of Hill's sentence." *Id.* at 581.

The Supreme Court's last ruling on a method-of-execution claim was in *Baze v. Rees,* 553 U.S. 35 (2008), which "clarified the standards that should apply to the merits of Eighth Amendment protocol challenges," and addressed lethal injection in particular for the first time. *Getsy v. Strickland*, 577 F.3d 309, 312 (6th Cir. 2009) (emphasis omitted).  The petitioners in *Baze* sought a declaratory judgment that Kentucky's three-drug lethal-injection protocol, which was similar to Ohio's at the time, violated the Eighth Amendment's prohibition against cruel and

8

unusual punishment, because "there is a significant risk that the procedures will *not* be properly followed -- in particular, that the sodium thiopental will not be properly administered to achieve its intended effect -- resulting in severe pain when the other chemicals are administered." *Id*. at 49 (emphasis original). They conceded, however, that "if performed properly," the administration of the initial drug would eliminate any "meaningful" risk of pain, and the execution under the current protocol would be "humane and constitutional." *Id*. In a plurality opinion, the Court explicitly recognized that the petitioners' claim fell within the scope of its Eighth Amendment jurisprudence. It stated: "Our cases recognize that subjecting individuals to a risk of future harm -- not simply actually inflicting pain -- can qualify as cruel and unusual punishment."[5] *Id*. The Court held that the Eighth Amendment prohibits the use of an execution procedure that is "*sure or very likely* to cause serious illness and needless suffering," creating an "objectively intolerable risk of harm," and involving a "demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives." *Id*. at 50, 61 (emphases original). It concluded that Kentucky's lethal-injection protocol did not meet that standard (primarily because of its safeguards), but left open the door for further lethal-injection challenges. *Id*. at 61 ("A State with a lethal-injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard.").

On July 23, 2008, three months after *Baze* was decided, the Sixth Circuit granted a certificate of appealability ("COA") on a petitioner's habeas claim challenging Ohio's lethal-

---

[5] The Court cautioned in *Baze*, however, that "the Constitution does not demand the avoidance of all risk of pain in carrying out executions[,]" since "[s]ome risk of pain is inherent in any method of execution -- no matter how humane -- if only from the prospect of error in following the required procedure." *Id*. at 47. And it noted that it has, in fact, "never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Id*. at 48.

injection protocol, which had been denied by another judge of this court. In an unpublished

order, the Sixth Circuit explained,

> . . . In light of the Supreme Court's recent decision in *Baze v. Rees*, . . . we believe
> that "reasonable jurists could debate whether . . . the issues presented were
> 'adequate to deserve encouragement to proceed further.'" . . . [S]even Justices
> adopted the view that a state could conceivably have protocols (or no protocols at
> all) that violate the Eighth Amendment.
>
> *Baze*, therefore, does not foreclose Jones's Eighth Amendment claim
> should he be able to demonstrate that Ohio's safeguards are different than
> Kentucky's in an unconstitutional manner. . . .  Accordingly, by granting the COA
> we give counsel on both sides the opportunity to investigate the important
> question of whether Ohio's safeguards are materially different than Kentucky's.

*Jones v. Bradshaw*, No. 07-3766, 2008 U.S. App. Lexis 28079, at *5-7 (6th Cir. July 23, 2008).

The Sixth Circuit still has not resolved this question. The court has, however,

expressly held that certain method-of-execution challenges are cognizable in habeas corpus. In

*Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011), the court affirmed the denial of respondent's

motion to dismiss the habeas petition attacking Ohio's lethal-injection protocol on the ground

that, based on *Hill*, the court lacked jurisdiction. The court explained:

> The Warden's contention that *Hill* "holds that a challenge to the particular
> means by which a lethal injection is to be carried out is non-cognizable in habeas"
> is too broad. Nowhere in *Hill* or *Nelson* does the Supreme Court state that a
> method-of-execution challenge is not cognizable in habeas or that a federal court
> "lacks jurisdiction" to adjudicate such a claim in a habeas action. Whereas it is
> true that certain claims that can be raised in a federal habeas petition cannot be
> raised in a § 1983 action, . . . it does not necessarily follow that any claim that can
> be raised in a § 1983 action cannot be raised in a habeas petition . . . . Moreover,
> *Hill* can be distinguished from this case on the basis that Adams has not conceded
> the existence of an acceptable alternative procedure . . . . Thus, Adams's lethal
> injection claim, if successful, could render his death sentence effectively invalid.
> Further, *Nelson*'s statement that "method-of-execution challenges[ ] fall at the
> margins of habeas," . . . strongly suggests that claims such as Adams's can be
> brought in habeas.

*Id*. at 483 (brackets in original).

Thus, it is clear after *Adams* that certain method-of-execution claims can be brought in habeas. It also is clear that, under *Hill* and *Adams*, the question of whether Phillips's lethal-injection claims properly sound in habeas or § 1983 centers on whether he is challenging Ohio's execution protocol as a general matter, or seeks to enjoin Ohio from executing him in the manner that Ohio currently intends, and whether he concedes that Ohio ever could execute him in a constitutional manner. *Hill*, 547 U.S. at 580. *See, e.g., Lynch v. Hudson*, No. 2:07-cv-948, 2011 WL 4537890, at *131 (S.D. Ohio Sept. 28, 2011) (Frost, J.). Indeed, in applying this standard, judges in both the Northern and Southern Districts of Ohio have determined that claims such as Phillips's, which contest Ohio's lethal-injection protocol, fall within the parameters of habeas. *See, e.g., Sheppard v. Warden, Chillicothe Corr. Inst.*, No. 1:12-CV-198, 2013 WL 146364, at *8 (S.D. Ohio Jan. 14, 2013) (Frost, J.) (noting that after *Adams*, "it is beyond dispute that certain method-of-execution challenges are cognizable in habeas corpus[,]" and holding that the petitioner's lethal-injection claims can proceed in habeas because they "are factually related to, but legally distinct from, the challenges that he is litigating in [the § 1983 action, where] Petitioner necessarily concedes that Ohio can, if it makes certain changes and improvements, execute him" constitutionally); *Robb v. Ishee*, No. 2:02-cv-535, ECF No. 145 at 1327 (S.D. Ohio July 16, 2012) (Marbley, J.) ("In the instant habeas corpus action, Petitioner lodges facial, unconditional challenges to the constitutionality of Ohio's execution method and nowhere concedes that Ohio can ever constitutionally execute him. Those challenges are factually related to, but legally distinct from, the challenges that Petitioner is litigating in *In re Ohio Execution Protocol Litigation* because there, he *does* concede that Ohio may, if it makes certain changes and improvements, be able to execute him in compliance with the United States Constitution. Respondent scoffs at the minutia but it is *not* a difference without distinction."); *Smith v. Pineda*,

No. 1:12-cv-196, 2012 WL 6021471, at *1 (S.D. Ohio Oct. 26, 2012) (Merz, M.J.) ("The Warden's first objection is essentially that Smith's [lethal-injection] claims are not cognizable in habeas corpus . . . . [A]ll of the judges of this Court who have considered the question . . . have found that the claims are cognizable."); *Chinn v. Bradshaw*, No. 3:02-cv-512, 2012 WL 2674518, at *2 (S.D. Ohio July 5, 2012) (Sargus, J.) (same); *Post v. Bradshaw*, No. 1:97 CV 1640, 2012 WL 5906802, at *5 n.3 (N.D. Ohio Nov. 26, 2012) (Wells, J.) (same); *Frazier v. Bobby*, No. 3:09-CV-1208, 2011 WL 5086443, at *58 (N.D. Ohio Oct. 25, 2011) (Gaughan, J.) (same).  *Cf. Treesh v. Robinson*, No. 1:12CV2322, 2012 WL 5617072, at *9 (N.D. Ohio Nov. 15, 2012) (Polster, J.) (finding petitioner's habeas lethal-injection claims, "to the extent" they raise "specific challenges" to Ohio's protocol, are "precisely the claims raised in [his] § 1983 action" and dismissing them in part on that ground).

### 2.  Phillips's method-of-execution claims

In the brief requested by the Court, Phillips frames his claims this way:

> Thus Phillips's claim is that *not only* has the State of Ohio been unable in the past to devise a constitutional lethal injection plan or to carry out lethal injection executions in compliance with the constitutional requirements of the Eighth and Fourteenth Amendments *but also* that it will never be able to do so *and further,* that because Ohio's unconstitutional lethal injection is the only method of execution in the State of Ohio Phillips's death sentence must be vacated.  *Only through habeas corpus can Phillips obtain relief from a sentence to an unconstitutional punishment.*

(ECF No. 5 at 56-57 (emphases in original).) Phillips differentiates his habeas claims from his § 1983 claims on the ground that his "habeas case requires a determination that Ohio is unable to ever constitutionally implement any form of lethal injection and thus that Phillips's death sentence must be vacated while the § 1983 case requires or at least permits the State of Ohio to

keep tinkering with its lethal injection execution method and implementation in the hope of achieving constitutional compliance." (*Id*. at 57.)

Respondent argues that Phillips's claims "are a specific challenge to the current procedures for implementing lethal injection" in Ohio, and therefore do not state a claim in habeas. (ECF No. 6 at 82.) He further contends that the fact that Phillips pursues different remedies in the two actions "is not dispositive of the matter." (*Id*. at 83.)

The Court disagrees. As the Supreme Court acknowledged in *Nelson*, method-of-execution claims do not fit neatly in either the § 1983 or § 2254 category, since a § 1983 claim "*may* amount to a challenge to the fact of the sentence itself," *Nelson*, 541 U.S. at 644 (emphasis added), but does not "*necessarily*" do so, *id*. at 647 (emphasis original). It follows that a habeas challenge seeking to vacate a petitioner's death sentence *may* include specific complaints that could be remedied without *necessarily* precluding lethal injection altogether, while the flawed aspects of the protocol and of the State's administration of that protocol, as a whole, pose an "objectively intolerable risk of harm" such that it could be "seen as barring the execution of [Phillips's] sentence." *Hill*, 574 U.S. at 581. Therefore, to strictly classify claims as falling within § 1983 or habeas based entirely on either general or specific pleading, while discounting the differences in remedies, is to overlook the true nature of the claim. For, in order to prove even the broadest method-of-execution claim, a petitioner necessarily must attack specific elements of the protocol; he cannot prove his case upon general, conclusory assertions alone.

Phillips's habeas claims challenge Ohio's lethal-injection method of execution in its entirety, and he concedes no safe alternative. Although the facts supporting Phillips's § 1983 and habeas claims may overlap, the legal theories and relief requested are distinct. While Phillips's § 1983 action addresses particular procedures, which can be modified or discontinued,

allowing the execution to proceed, his habeas action addresses a different issue: whether his death sentence should be vacated because this method of execution cannot ever be performed in a constitutional manner. The relief Phillips requests infuses his claims with an entirely different legal posture, as the courts in *Hill* and *Adams* recognized. This distinction, therefore, is indeed dispositive: habeas relief simply is not available to Phillips through a § 1983 action. Accordingly, this Court finds that Phillips's claims sound in habeas.

Respondent asserts a final argument supporting his contention that Phillips's claims cannot sound in habeas, positing that habeas relief would not be available even if he were to succeed on the merits. He states that "Phillips'[s] claims, if successful, would not preclude the State from carrying out his sentence," because Ohio's death-penalty statute does not specify any particular procedures to administer the lethal injection and provides that if lethal injection is no longer viable, Ohio can use "any different manner of execution prescribed by law subsequent to the effective date of this amendment." (ECF No. 6 at 86-87, quoting Ohio Rev. Code § 2949.22(A), (C).) Thus, he contends, Phillips "cannot establish the unlawfulness of his conviction or sentence that is the prerequisite to relief in federal habeas corpus." (*Id*. at 86.)

This argument fails. In *Adams*, the Sixth Circuit stated that "Adams's lethal-injection claim, if successful, could render his death sentence effectively invalid." *Adams*, 644 F.3d at 483. And that is true here. If Phillips were successful, his sentence would be vacated, since lethal injection is the only "practicable, legal method of execut[ion]" under Ohio law, *Hill*, 547 U.S. at 580, and because, as in *Adams*, Phillips "has not conceded the existence of an acceptable procedure." *Adams*, 644 F.3d at 483. His case then would be remanded to the state courts for resentencing under a conditional writ. *See Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) (a habeas "case challenging a sentence seeks a prisoner's 'release' in the only pertinent sense: It

14

seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement; . . . the State may seek a *new* judgment (through a new trial or a new sentencing proceeding) . . . ." (emphasis in original)).

### 3. Abstention doctrine and concurrent jurisdiction

Respondent further argues that Phillips's habeas claims are "duplicative" of his § 1983 claims and, because the law does not permit the "simultaneous litigation" of both suits, Phillips's petition should be dismissed. (ECF No. 6 at 78.) This argument also is unavailing.

The Supreme Court has declared that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, when a district court is presented with the same matter over which another district court has jurisdiction, "though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Id.* The decision of whether to abstain involves "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Circumstances warranting dismissal are "exceptional," however, and "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 818-19.

In situations involving the contemporaneous exercise of concurrent jurisdiction, a district court "may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding on the other suit." *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997) (citing *Kerotest,* 342 U.S. at 183-84). The Court must first determine, however, that the two cases are, in fact, duplicative. *Id.* A duplicative suit is one that is "materially on all fours with the other," and has such an identity of issues "that a

determination in one action leaves little or nothing to be determined in the other." *Id.* (quotation marks and citations omitted). Duplicative actions generally have identical parties, legal issues and available relief. *See, e.g.*, *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 578 (7th Cir. 1995) ("A suit is only duplicative if it involves the 'same claims, parties, and available relief.'"); *National Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (actions are duplicative for abstention purposes where "there is an identity of parties, and the issues and relief sought are the same"). Indeed, the Sixth Circuit has held that § 1983 and habeas are not necessarily mutually exclusive, and that certain parole cases can be brought under both statutory schemes. *Terrell v. United States*, 564 F.3d 442, 448 (6th Cir. 2009).[6]

Respondent provides no authority for his position that an inmate cannot pursue both § 1983 and habeas method-of-execution claims at the same time in separate federal district courts. Nor, as explained above, does this Court believe that Phillips's habeas and § 1983 claims are identical. The cases, therefore, are not duplicative for abstention purposes, and the Court finds no compelling reason to dismiss the case on that basis. *See Burger v. Kemp*, 483 U.S. 776, 785 (1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."). *Accord Sheppard,* 2013 WL 146364, at *7 ("The Court also overrules Respondent's objection asserting that Petitioner's pursuit of dual track [§ 1983 and habeas] litigation is somehow inequitable"); *Chinn*, 2012 WL 2674518, at *2 ("[T]his Court is aware of no authority precluding an inmate from simultaneously litigating a method-of-execution challenge in habeas corpus and . . . § 1983"). *But see Treesh,* 2012 WL 5617072, at

---

[6] In arguing that § 1983 and § 2254 are "mutually exclusive," respondent relies upon the Eleventh Circuit's reasoning in *Hutcherson v. Riley*, 468 F.3d 750 (11th Cir. 2006) (*see* ECF No. 6 at 79-80), which the court in *Terrell* specifically rejected. 564 F.3d at 446 n.8.

*10 ("In this Court's view, the multiple and overlapping lawsuits challenging lethal injection in Ohio represent a significant and unnecessary drain on judicial resources.").

This Court concludes, therefore, that Phillips's claims properly sound in habeas, and respondent's argument that his petition fails to state a claim is meritless.

**B.     This Court's Jurisdiction Under AEDPA's § 2244**

Respondent next argues that, even assuming Phillips's petition sounds in habeas, it should be dismissed because this Court lacks jurisdiction over it. He contends it is barred both as a "second or successive" petition subject to 28 U.S.C. § 2244(b) and because it was filed past the statute of limitations set forth in 28 U.S.C. § 2244(d).

**1.     "Second in time" or "second or successive"**

Given that Phillips's petition properly sounds in habeas, this Court must determine whether it is a "second or successive" petition subject to § 2244(b), in which case this Court is barred from considering it unless it meets certain requirements. *In re Smith*, 690 F.3d 809, 810 (6th Cir. 2012) (ruling that district courts should determine in the first instance whether a numerically second habeas petition is "second or successive" within the meaning of § 2244(b)).

Under the gatekeeping provisions of § 2244(b), claims presented in a "second or successive" habeas application that were previously presented in a federal habeas petition must be dismissed. 28 U.S.C. § 2244(b)(1). Claims in a "second or successive" petition that were not previously presented also must be dismissed unless they rely either on a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. 28 U.S.C. § 2244(b)(2). If a district court finds a petition to be "second or successive," a petitioner must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). The district court may transfer it to the Sixth Circuit

17

pursuant to 28 U.S.C. § 1631 for a determination of whether it should be authorized, rather than dismiss it outright. *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997). The court of appeals then may authorize the filing of the successive application "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005).

Whether a petition is "second or successive" within the meaning of § 2244(b) does not depend merely on whether the petitioner filed a prior habeas petition, or, stated differently, whether the petition is "second in time." The phrase "second or successive" is instead a "term of art" that is "given substance" by the Supreme Court's habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). And, as the Sixth Circuit has explained, "in a series of post-AEDPA cases, the Supreme Court has confirmed that a numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010).

Relying upon *Magwood v. Patterson*, 130 S. Ct. 2788 (2010), respondent first argues that Phillips's petition is "second or successive" because it "attacks the same judgment that was the subject of his first habeas corpus petition." (ECF No. 6 at 88.) The Supreme Court held in *Magwood* that, "[b]ecause Magwood's habeas application challenges a new judgment for the first time, it is not 'second or successive' under § 2244(b)." *Id*. at 2792. *Magwood* did not hold, however, as respondent suggests, that any subsequent petition that attacks the same judgment that a prior petition challenged is successive. In fact, the Court explicitly repeated its prior position that a "second-in-time" habeas petition is not automatically "second or successive" under § 2244(b). It stated:

This case does not require us to determine whether § 2244(b) applies to every application filed by a prisoner in custody pursuant to a state-court judgment if the prisoner challenged the *same* state-court judgment once before. Three times we have held otherwise. *See Slack v. McDaniel*, 529 U.S. 473, 487, 120 S.Ct. 1595 (2000); *Stewart v. Martinez -Villareal*, 523 U.S. 637, 643, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

The dissent's claim that our reading of § 2244(b) calls one of those decisions, *Panetti*, into doubt . . . is unfounded. The question in this case is whether a first application challenging a new sentence in an intervening judgment is second or successive. *It is not whether an application challenging the same state-court judgment must always be second or successive.*

*Id*. at 2799 n.11 (emphasis added).

Respondent further argues that "there are no bases for excluding from § 2244(b)'s limitations the type of general challenge cognizable in habeas corpus, which is *not* dependent on the existence of a particular written policy . . . [or] on the prisoner's actual physical or mental condition at the time of execution." (ECF No. 6 at 88.) He explains: "That is because the gravamen of a general challenge is the State's alleged inability to constitutionally implement lethal injection under any circumstances." (*Id*.)

Phillips urges that his petition is not successive because his claims

did not exist until Ohio's execution protocol was revamped and revised into its present state, after completion of Phillips's first-time habeas petition. Indeed, Phillips's claims are principally based on Ohio's lethal injection protocol adopted on September 18, *2011*, and subsequently amended, and on evidence obtained in the past year during the course of discovery and evidentiary hearings in *In re Ohio Execution Protocol Litigation*.

(ECF No. 1 at 7, emphasis in original.) Phillips cites as support, among other cases, *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). (ECF No. 9 at 221-23.) In those cases, the Supreme Court held that the statutory bar on second or

successive applications does not apply to *Ford*-based incompetency claims[7] filed after the state

has obtained an execution warrant. *Martinez-Villareal*, 523 U.S. at 640 (as to an identical,

previously filed claim); *Panetti*, 551 U.S. at 947 (as to a claim that had not been presented in an

earlier petition). This exception is based on the ripeness doctrine, permitting a petitioner to file

what is functionally a first petition as to a previously unripe claim that becomes ripe only when

execution is imminent, since an individual's competency to be executed cannot properly be

assessed until that time. *See Martinez-Villareal*, 523 U.S. at 645 ("Respondent brought his claim

in a timely fashion, and it has not been ripe for resolution until now."); *Panetti*, 551 U.S. at 945

("We conclude, in accord with this precedent, that Congress did not intend the provisions of

AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture

presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as

that claim is ripe.").

The Sixth Circuit has not considered whether the ripeness theory adopted in

*Martinez-Villareal* and *Panetti* applies to numerically second habeas petitions raising lethal-

injection claims, such as Phillips's. In the Sixth Circuit case *In re Smith*, however, Judge Clay

concurred with the majority that a district court should first determine whether a habeas

application is deemed successive before it is transferred to the court of appeals. In that case,

instead of remanding to the district court for that determination, he would have reached the issue

and held that the habeas petition was not second or successive and, therefore, did not need

authorization from the Sixth Circuit to proceed. He explained:

> This decision is warranted because Smith's claims involve the constitutionality of
> Ohio's new lethal injection execution policy and protocol, which was not adopted

---

[7] In *Ford v. Wainwright*, 477 U.S. 399, 410 (1986), the Supreme Court held that "the Eighth Amendment prohibits a
State from inflicting the penalty of death upon a prisoner who is insane."

until September 18, 2011, as well as the constitutionality of the protocol as it applies to Smith, given his recent 2009 diagnosis with laryngeal cancer and other medical problems. . . . These claims were not ripe at the time Smith filed his prior habeas petition. Needless to say, as a result, this case would be remanded to the district court for the issues to be addressed on the merits.

*In re Smith*, 690 F.3d at 811 (Clay, J., concurring) (citations omitted). *Cf. Alley v. Little,* No. 06-5816, 2006 WL 1736345, at *3 (6th Cir. June 24, 2006), and *Cooey* (both § 1983 cases in which the Sixth Circuit rejected inmates' arguments that, under *Martinez-Villareal*, their lethal-injection claims did not become ripe until an execution date was imminent).

This Court likewise finds that Phillips is asserting "claims whose predicates arose after the filing of the original petition." *In re Jones,* 652 F.3d at 605. Phillips's claims are based on Ohio's new execution protocol, which was adopted on September 18, 2011, after the Sixth Circuit had affirmed the dismissal of his original petition. Therefore, these claims were not ripe when Phillips filed his first petition and, applying *Panetti* and *Martinez-Villareal*, the petition is not second or successive under § 2244(b).[8] *Accord Sheppard,* 2013 WL 146364, at *9 ("[C]ertain claims that sound in habeas corpus because they challenge the lawfulness of the state-court judgment nonetheless may be unripe at the time the petition is filed and evolve or newly ripen. The Supreme Court recognized as much in *Panetti* and *Martinez-Villareal*."); *Smith v. Pineda*, No. 1:12-cv-196, 2012 WL 3686275, at *5 (S.D. Ohio Aug. 27, 2012). *But see Treesh,* 2012 WL 5617072, at *8 (finding petition successive where lethal-injection claims "are virtually identical to those asserted in [petitioner's] initial habeas petition"); *Post*, 2012 WL 5906802, at *5 (same).

---

[8] Exhaustion and procedural default are not at issue here, because Ohio does not provide a forum for method-of-execution challenges. *Scott v. Houk*, 127 Ohio St. 3d 317, 939 N.E.2d 835 (Ohio 2010).

### 2.  § 2244(d) statute of limitations

Respondent further argues that Phillips's petition is time-barred by the one-year statute of limitations set forth in § 2244(d)(1)(D), which provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . .  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D). In contrast to respondent's position that Phillips's claims "are a *specific* challenge to [Ohio's] current procedures for implementing lethal injection," and therefore should, as described above, be raised via § 1983, respondent argues, for purposes of the statute of limitations, that Phillips's claims "are tantamount to a *general* challenge to lethal injection, as opposed to a challenge to the specific drug protocol."[9] (ECF No. 6 at 82, 92, emphasis added.) Thus, he asserts that "the predicate facts supporting a general challenge to lethal injection were discoverable, through the use of due diligence, in 2001, when Ohio adopted lethal injection as its sole method of execution." (*Id.* at 93.) He cites to the "long history" of general challenges to Ohio's lethal-injection protocols. (*Id.*)

Phillips counters that his "habeas claims could not have been raised previously, because the claims and/or the evidence that supports the claims did not exist until recently." (ECF No. 9 at 233.) He explains that his claims accrued when Ohio adopted its current lethal-injection protocol on September 18, 2011, which "materially changed" its execution policy, and

---

[9] Respondent contends that Phillips "wants it both ways," so that his petition is general enough to sound in habeas but specific enough to avoid § 2244's bars. (ECF No. 6 at 83.) But respondent appears to want the same thing, focusing on either the general or specific aspects of Phillips's claims as it suits his arguments. Indeed, arguments both supporting and opposing these habeas method-of-execution claims are contradictory in some key respects. The Court reiterates, however, that, by examining the claims as a whole, the contradictions become less significant.

are based on evidence obtained through the § 1983 suit in the Southern District of Ohio, including evidence submitted at a hearing held on January 3, 2012. (*Id*. at 225.)

The Sixth Circuit has not addressed how § 2244(d) applies to method-of-execution claims raised in habeas. It has, however, addressed the issue relative to § 1983 cases. In *Cooey*, *supra*, the Sixth Circuit reversed the district court's ruling that Cooey's method-of-execution claim accrued when his execution became imminent and he knew or had reason to know of the facts that gave rise to his specific method-of-execution challenge and that his claim, therefore, was not time-barred. *Cooey*, 479 F.3d at 416. The court held instead that "since the 'date' the lethal injection protocol is imposed is infeasible, it stands to reason that the next most appropriate accrual date should mirror that found in the AEDPA: upon conclusion of direct review in the state court or the expiration of time for seeking such review," as provided for in § 2244(d)(1)(A), or when the particular method of execution is adopted by the state. *Id*. at 421-22. The plaintiff in *Cooey* argued that the accrual date was reset because Ohio had recently changed its protocol. *Id*. at 424. But the court rejected this argument, because the plaintiff failed to demonstrate that the changes were related to his "core complaints" or "were implicated as a basis for Cooey's expert's conclusion that the process presents a risk that Cooey will experience pain." *Id*.

In *Getsy v. Strickland*, 577 F.3d 309 (6th Cir. 2009), the Sixth Circuit reaffirmed *Cooey*'s rule regarding the statute of limitations for § 1983 method-of-execution claims, including its test for resetting the accrual date when modifications in execution protocols occur. It again rejected the petitioner's argument that the accrual date should be reset to the date that modifications to Ohio's lethal-injection protocol went into effect, on the ground that the plaintiff "ha[d] not made a prima facie showing that the May 14, 2009 modifications will likely subject

23

him to extreme pain based on either new evidence or on existing evidence that has already been proffered in support of his 'core complaints.'" *Id*. at 313. *See also Broom v. Strickland*, 579 F.3d 553, 556 (6th Cir. 2009) (rejecting resetting accrual date to when the plaintiff obtained newly released information regarding specifics of Ohio's lethal-injection protocol); *West v. Ray*, No. 10-6196, 2010 WL 4576585, at *4 n.1 (6th Cir. Nov. 4, 2010) (declining to broaden *Cooey*'s analysis to allow the accrual date to reset to the date of any new piece of evidence in support of a preexisting claim); *Irick v. Ray*, 628 F.3d 787, 789 (6th Cir. 2010) ("The district court properly applied our analysis in *Cooey* [ ] to determine that the statute of limitations began to run either in 1989 when Plaintiff's direct review process was final, or in 2000 when lethal injection became the presumptive method of execution in Tennessee.").

More recently, however, in *Cooey (Beuke) v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010), the Sixth Circuit held that the accrual date of the plaintiff's § 1983 lethal-injection claim should be reset to the date Ohio's new protocol (i.e., a one-drug intravenous injection, with a two-drug intramuscular injection back-up procedure) took effect, that is, November 30, 2009. It concluded that "[g]iven the change of policy, the statute of limitations to challenge the new procedure began to run anew." *Id*.

Respondent argues that this Court should apply *Cooey* and *Getsy* and decline to *reset* the accrual date of Phillips's claims. He states that "[b]ecause Phillips's general lethal injection challenge has been in existence since 2001, modifications to the protocol that do not create undue suffering, do not reset the accrual date for Phillips's preexisting general lethal injection challenge." (ECF No. 6 at 97.) *Cooey* and *Getsy* do not apply here. In those § 1983 cases, the court adopted AEDPA's § 2244(d)(1)(A) as the accrual date and created an exception for resetting that date. Here, there is no need to reset the accrual date of Phillips's claims,

because, as respondent concedes, § 2244(d)(1)(D) applies.[10] This provision explicitly "gives defendants the benefit of a later start if vital facts could not have been known by the date the appellate process ended." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).

Phillips is challenging virtually every aspect of Ohio's September 18, 2011 execution protocol, which made significant changes to Ohio's execution policy and procedures. *See Cooey (Brooks) v. Kasich*, Nos. 2:04-cv-1156, 2:09-cv-242, 2:09-cv-823, 2:10-cv-27, 2011 WL 5326141, at *5 (S.D. Ohio Nov. 4, 2011) (describing the changes contained within the September 2011 execution protocol and concluding, "[t]hings have changed").[11] He attacks the drugs employed, the delivery mechanisms used for the drugs, the physical structures employed, the personnel and training, the "unfettered discretion" granted to certain persons involved, and the denial of his right to counsel. (ECF No. 1 at 14-15.) Thus, Phillips could not have discovered the factual predicate of his claims before the current protocol was in place, and his petition is not time-barred.[12]

The District Court for the Southern District of Ohio similarly has found lethal-injection claims raised in habeas petitions to be timely under § 2244(d)(1)(D) because they were filed within one year of Ohio's September 18, 2011 protocol. In *Chinn, supra*, Judge Sargus

---

[10] The Sixth Circuit expressly rejected a § 1983 plaintiff's argument that *Cooey* fully adopted AEDPA's statute of limitations provisions. *Broom*, 579 F.3d at 556.

[11] The Court further notes that the Sixth Circuit, in *Cooey (Brooks)*, found these changes "render[ed] the protocol more sound," and refused to grant injunctive relief staying the plaintiff's execution. *Cooey (Brooks)*, 2011 WL 5326141, at **5, 13. At the same time, the court also acknowledged that it has not yet held that Ohio's execution practices are constitutional, and expressed its "concern over the successful implementation of and adherence to the September 18, 2011 protocol." *Id.* at *13.

[12] Even if this Court were to apply *Cooey*'s test for resetting the accrual date, the result would be the same. Due to the breadth of the revisions in the September 2011 protocol and the broad nature of Phillips's attack, it can easily be inferred that Phillips is claiming that virtually all key aspects of Ohio's current lethal-injection program -- which he could not have challenged until it became effective -- "might create undue suffering." *See Cooey (Beuke)*, 604 F.3d at 942.

25

noted the "ongoing development of critical facts supporting the ever-evolving challenges to Ohio's execution protocol," and explained:

> Even if some of the facts and anecdotal evidence supporting Petitioner's method-of-execution challenges existed prior to the effective date of the current protocol, it would be non-sensical for Petitioner to lodge a facial, unconditional challenge to a method of execution whose foundation -- Ohio's execution protocol as written -- has been superseded. In fact, it could be argued that any such claim would fail to present a case or controversy, effectively putting it beyond the scope of this Court's reach. Moreover, Respondent offers no authority supporting his position that Petitioner could have discovered the factual predicate underlying his method-of-execution challenges any time before the effective date of Ohio's most recent execution protocol.

*Chinn*, 2012 WL 2674518, at **3-4. *Accord Sheppard*, 2013 WL 146364, at **3-4, 7 ("Petitioner could not have raised these claims before final adjudication of his initial Petition.").

## C.    Appropriate Venue

As the Court has indicated, there is significant overlap between the claims set forth in Phillips's habeas petition and the claims he currently is litigating in the § 1983 civil rights action in the Southern District of Ohio before Judge Frost. For that reason, the Court finds that, in the furtherance of justice and in the interest of judicial economy, this case should be transferred to the Southern District of Ohio for determination.

Under 28 U.S.C. § 2241(d), an inmate in a state that has more than one federal judicial district may file a writ of habeas corpus in the district court in either the district in which the inmate was convicted or the district in which the inmate is confined. 28 U.S.C. § 2241(d). Those district courts have concurrent jurisdiction to entertain the application. *Id*. The practice in federal court generally is for habeas petitions to be filed in the district of conviction rather than confinement. *See, e.g., Eagle v. Linahan*, 279 F.3d 926, 933 n.9 (11th Cir. 2001); *Laue v. Nelson*, 279 F. Supp. 265, 266 (C.D. Cal. 1968). However, § 2241(d) permits a district court "in the

exercise of its discretion and in furtherance of justice" to "transfer the application to the other district court for hearing and determination." 28 U.S.C. § 2241(d).

When deciding whether to transfer a habeas corpus petition to another district, district courts also have relied upon the statute governing change of venue for standard federal civil cases, 28 U.S.C. § 1404(a). *See, e.g., In re Nwanze*, 242 F.3d 521, 526 n.2 (3d Cir. 2001) (§ 1404(a) applies to transfers of habeas corpus petitions). Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading 'the interest of justice.'" *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (internal quotation marks and citations omitted).

One factor that courts have found to weigh strongly in favor of transfer is the risk of duplicative proceedings and potentially inconsistent judgments. *See, e.g., Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 193-94 (D.D.C. 2012) ("[T]he interests of justice weigh strongly in favor of transferring this case . . . in order to avoid duplicative and potentially inconsistent rulings, and, at least to some degree, to streamline pretrial discovery."); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000) (noting "the compelling public interest in avoiding duplicative proceedings and potentially inconsistent judgments"). Accordingly, district courts have transferred cases to other districts in which related cases are pending. *See, e.g., Parker v. Singletary*, 974 F.2d 1562, 1582 (11th Cir. 1992) (concluding that "strong considerations of judicial economy" dictate that habeas case be transferred to another district court pursuant to § 2241(d) because that court was "already

27

intimately familiar with Parker's claims"); *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring this case is the presence of closely related litigation.").

Here, Phillips's habeas and § 1983 actions are legally distinct but intrinsically related. The Court is concerned that, if it retains this case and rules on the merits of Phillips's habeas method-of-execution claims, its findings would surely overlap, and possibly conflict with, Judge Frost's decisions in *In re OEPL*. The duplicative proceedings would serve no one's interests: not Phillips's interest in obtaining a prompt and fair resolution of his claims; not the State's and victims' interest in the finality of his conviction and sentence; and not the public's interest in wise judicial administration. Even worse, conflicting rulings, possibly involving stays of execution, could create undue and unnecessary confusion. Given these risks, the Court finds that the interests of justice will best be served if Phillips's habeas petition is transferred to the District Court for the Southern District of Ohio where his related § 1983 lethal-injection litigation is pending.[13]

## III.    Conclusion

Accordingly, for the reasons set forth herein, the Court concludes that Phillips's petition states claims in habeas corpus, and is neither "second or successive" under AEDPA's § 2244(b), nor untimely under § 2244(d). Respondent's motion to dismiss (ECF No. 6) is, therefore, **DENIED**. In addition, pursuant to 28 U.S.C. § 2241(d), Phillips's petition for writ of

---

[13]  Phillips's habeas case most likely would be deemed "related" to *In re OEPL* and assigned to Judge Frost under the Southern District of Ohio's local rules, since both cases "[a]rise from the same or substantially identical transaction, happening, or event"; "[w]ould entail a substantial duplication of effort and expense by the Court and the parties if heard by different judges"; and "[s]eek relief that could result in a party's being subject to conflicting orders of this Court."  S.D. Ohio L. R. 3.1(b)(1), (3), (4).

28

habeas corpus will, by separate order, be transferred to the United States District Court for the Southern District of Ohio for all further proceedings.

**IT IS SO ORDERED**.

Dated: August 2, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**